# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**AMBER WELCH**
C/O THE PATTAKOS LAW FIRM
101 GHENT ROAD
FAIRLAWN, OHIO 44333

**R.W. (D.O.B. 11/25/2005)**
C/O THE PATTAKOS LAW FIRM
101 GHENT ROAD
FAIRLAWN, OHIO 44333

**PLAINTIFFS,**

**V.**

**ASHTABULA COUNTY CHILDREN
SERVICES BOARD**
3914 C COURT
ASHTABULA, OH 44004

**and**

**TANIA BURNETT**
C/O ASHTABULA COUNTY
CHILDREN SERVICES BOARD
3914 C COURT
ASHTABULA, OH 44004

**and**

**ANGELA LAWTON**
C/O ASHTABULA COUNTY
CHILDREN SERVICES BOARD
3914 C COURT
ASHTABULA, OH 44004

**DEFENDANTS.**

**CASE NO.**

**JUDGE**

**<u>VERIFIED COMPLAINT
WITH JURY DEMAND</u>**

- UNREASONABLE SEIZURE
- VIOLATION OF DUE PROCESS
  RIGHTS
- INJUNCTION
- DECLARATORY JUDGMENT
- INTERFERENCE WITH
  CUSTODY
- FALSE IMPRISONMENT

Plaintiffs, Amber Welch ("Mother") and R.W. ("Child"), in this Complaint against Defendants, Ashtabula County Children Services Board ("ACCS"), Tania Burnett, and Angela Lawton (collectively "Defendants"), state as follows:

## INTRODUCTION

1.      This is an action by Plaintiffs Mother and Child to keep the Defendant ACCS representatives from unlawfully exercising custody over the Child and violating Plaintiffs' fundamental constitutional rights. Defendants admit, and it is beyond reasonable dispute, that Defendants are prohibited by law from exercising custody over R.W., yet she remains in their custody, and according to emails by Defendants' representatives, they plan to transport her to a facility in Arkansas next week.

## PARTIES

2.      Plaintiff Amber Welch is a medical lab technician, resident of Ashtabula, Ohio, and is the biological Mother, Natural Guardian, and Next Friend of Plaintiff R.W., whose date of birth is November 25, 2005.

3.      Defendant Ashtabula County Children Services Board (ACCS) is a political subdivision of the State of Ohio, subject to suit in this Court.

4.      Defendant Tania Burnett is the Executive Director for ACCS and has been an active participant regarding her agency's decisions regarding Plaintiff and R.W.

5.      Defendant Angela Lawton is the on-going ACCS caseworker for R.W.

6.      At all times relevant, Plaintiffs are and were a resident of Ashtabula County, Ohio.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction under the provisions of Title 28, United States

Code, Sections 1343(a)(3) and/or 1331 since this matter is wholly civil in nature and is

brought pursuant to 42 U.S.C. § 1983.

8.     Venue is proper in in the Northern District of Ohio all Plaintiffs and Defendants

are based out of Ashtabula County, Ohio, and is the location where the decisions

regarding R.W. were made.

## FACTS

9.     R.W. was in her Mother's custody in Ashtabula, Ohio at the time of her removal

by ACCS when it sought and was granted an Ex Parte Emergency Order from the Court

of Common Pleas, Juvenile Division, Ashtabula County, Ohio ("Juvenile Court") on or

about June 4, 2020.  **Exhibit 1**, Ex Parte Emergency Order dated June 4, 2020 from the

Court of Common Pleas, Juvenile Division, Ashtabula County, Ohio.[1]

10.     ACCS did not seek the removal or any involvement with Mother's other two

children.

11.     The Ex Parte Emergency Order (**Ex. 1**) was sought as a result of an incident

during which R.W. committed domestic violence against her Mother. Mother did not

object to the emergency order because she was concerned that R.W., in the state she was

---

[1] The Exhibits to this Complaint have been redacted to omit reference to R.W.'s first
name and confidential medical information.

in at the time, might not be safe at her home and might present a safety risk for Mother's other two children.

12.     Mother waited for more than ten hours with R.W. at the Juvenile Court Resource Center and later at the hospital while seeking help from ACCS before ACCS removed R.W. from Mother's custody pursuant to ACCS' request for emergency temporary custody of R.W. (**Ex. 1**).

13.     At all times, Mother has complied and worked with ACCS to ensure her daughter would be returned to her, but now ACCS unlawfully seeks to keep R.W., potentially until the age of 21, as ACCS is seeking a final Dispositional Order that R.W. enter in a Planned Permanent Living Arrangement (PPLA), and transport of R.W. to a facility in Arkansas, despite ACCS failing to adhere to numerous clear well-established laws prohibiting their continued custody over her.

14.     A final Dispositional Order of PPLA requires ACCS to make an appropriate placement of the Child and develop a case plan that is designed to assist the Child in finding a permanent home outside of the home of her Parents. R.C.2151.415(C)(2)(b).

15.     PPLA is in direct contrast to what Mother and R.W. seek, as Mother and R.W. seek to be reunited with each other and all of the issues that caused ACCS to seek Emergency Temporary Custody of R.W. have been remedied and resolved for many months now.

16.    June 4, 2020—the date that Ashtabula County officials sought and obtained the

Ex Parte Emergency Order (**Ex. 1**) first giving them custody of R.W.— is a key date at

issue in this lawsuit, as dependency, abuse, and neglect cases in Ohio Juvenile Courts

have specific laws that address time limits and time frames available in these types of

cases. The natural termination of these types of cases if a child is in the temporary

custody of a children services agency such as ACCS, is one year from the date the Child

is taken into the children services agency's temporary custody, and can be extended for

six months at a time if done properly, with the maximum time limit a Child can be in

the temporary custody of a children services agency being two years. *See* R.C.

2151.353(G); R.C. 2151.415(D)(3) and (4).

17.    The term "Sunset Date" commonly refers to the date on which a dependency,

abuse, neglect case is required to terminate by these statutes, and is used at the one-year

date, the eighteen-months date, and the twenty-four-months date determined from the

day the Child was taken into the temporary custody of a children services agency.

18.    Not less than thirty days prior to any such Sunset Date, the children services

agency that possesses temporary custody of the Child must file a dispositional motion

seeking some sort of conclusion to the case or an extension of time for a parent or

guardian to attempt to reunify with the Child. And again, no more than two six month

extensions of time can be provided in these types of cases which results in a two year

maximum deadline that a Child can be in the temporary custody of a children services agency.  R.C. 2141.415(A); R.C. 2151.415(D)(3) and (4); Ohio Juv. R. 14.

19.     The June 4, 2020 Ex Parte Order (**Ex. 1**) created a dependency, abuse, neglect case in regarding R.W. in the Juvenile Court under case number 2020 JC 00044.

20.     On June 5, 2020, ACCS filed a Verified Complaint for Temporary Custody of R.W. in Juvenile Court alleging R.W. was a dependent child as defined in R.C. 2151.04(C) and neglected child as defined in R.C. 2151.03(A)(4) because it was alleged Mother would not pick up R.W. from detention after R.W. was arrested for assaulting Mother and because certain health issues "do not appear to be addressed properly." **Exhibit 2**, Verified Complaint for Temporary Custody by ACCS filed on June 5, 2020.

21.     In its Verified Complaint for Temporary Custody filed on June 5, 2020, ACCS indicated ACCS "was granted emergency temporary custody of [R.W.] on 06/04/2020 as a result of [R.W.'s] delinquency hearing of the same day; this was done to ensure that [R.W.] has a safe place to be while further service options are explored through this agency."  **Ex. 2**, pg. 3.

22.     On June 5, 2020, the Juvenile Court held a Shelter Care/ Pre-Disposition hearing regarding R.W. and held, consistent with the wishes of R.W., both of her parents, and the appointed Guardian ad Litem, that, based on the health and behavioral problems at issue, it was "in the best interest of the minor child, [R.W.], [that] she should be placed in the **temporary** custody of ACCSB to receive the help and treatment she needs."

**Exhibit 3**, Juvenile Court's Shelter Hearing/ Pre-Disposition Judgment Entry filed June 8, 2020 (emphasis added).

23.    Mother was not represented by counsel at the Shelter Hearing/ Pre-Disposition hearing. **Ex. 3**.

24.    On July 2, 2020, an Adjudicatory Hearing was held in Juvenile Court regarding the allegations of dependency and neglect of R.W.  **Exhibit 4**, Juvenile Court's Adjudicatory Hearing Judgment Entry filed on July 6, 2022.

25.    During the Adjudicatory Hearing, Mother stipulated to the fact she would not pick up R.W. from detention initially after R.W. committed domestic violence against her, and the Juvenile Court found R.W. to be Dependent pursuant to R.C. 2151.04(C). **Ex. 4**.

26.    On August 5, 2020, the Juvenile Court held a Dispositional Hearing Regarding R.W. and kept her in the temporary custody of ACCS despite "that [R.W.'s] wish [wa]s to be home with family." **Exhibit 5**, Juvenile Court's Dispositional Hearing Judgment Entry.

27.    At the Dispositional Hearing, the Juvenile Court made a scrivener's error when it held the Sunset Date in the matter regarding R.W. was June 29, 2021, as opposed to the correct date, June 4, 2021.  **Ex. 5**, pg. 2.

28.    On March 25, 2021, the Juvenile Court held a Semi-Annual Review Hearing and where ACCSB advised the court that R.W. was "doing very well in school and in

placement" and the Guardian ad Litem stated this is the "best [R.W.] has ever been doing." **Exhibit 6**, Juvenile Court's Judgment Entry filed March 29, 2021.

29.     On June 29, 2021, twenty-five days after what should have legally been the Sunset Date of the Juvenile Court case regarding R.W., and fifty-five days after the deadline to file any type of Sunset Dispositional Motion pursuant to law and the Juvenile Rules of Procedure, ACCS filed a Motion to Extend Temporary Custody of R.W. in the Juvenile Court.  **Exhibit 7**, ACCS' Motion to Extend Temporary Custody filed June 29, 2021.

30.     There is no Journal Entry from the Juvenile Court granting ACCS' Motion to Extend Temporary Custody of R.W., however, assuming, the Court granted ACCS' Motion, the next Sunset Date would have been on December 4, 2021.

31.     On November 16, 2021, ACCS through the Ohio Department of Job and Family Services filed a Case Review with the Juvenile Court.

32.     The November 16, 2021, Case Review states in pertinent part:

   a.   As to adult protective capacity:

      i.   There are no concerns regarding Mother's protective capacity in the behavioral domain;

      ii.  There are no concerns regarding Mother's protective capacities in the cognitive domain;

      iii. There are no concerns regarding Mother's protective capacities in the emotive domain.

   b.   As to adult functioning elements:

       i.   There is no risk for Mother in any criteria listed, which includes: cognitive abilities, physical health, emotional/ mental health functioning, domestic relations (domestic violence), substance abuse, response to stressors, and parenting practices.

33.     On January 10, 2022, the Juvenile Court filed a Judgment Entry regarding a QRTP Findings Hearing, attached hereto as **Exhibit 8**.

34.     The Juvenile Court's Judgment Entry filed on January 10, 2022, stated that there was a hearing on December 9, 2021, and ACCS made an Oral Motion to Extend Temporary Custody of R.W. for a six-month period of time, which the Juvenile Court granted, ordering that ACCS's temporary custody would continue until the final Sunset Date of June 5, 2022. **Ex. 8**.

35.     Mother is in the process of seeking a recording of the December 9, 2021 hearing before the Juvenile Court to ascertain that an Oral Motion to Extend Temporary Custody was in fact made, even though the Ohio Revised Code requires Sunset Dispositional Motions to be made in writing and filed with the Court.

36.     On February 28, 2022, ACCS filed a Motion to Extend Temporary Custody of R.W. in the Juvenile Court again (attached hereto as **Exhibit 9**), this time being two months and twenty-four days after the eighteen-month Sunset Date and three months and twenty four days late pursuant to law and the Juvenile Rules of Procedure.

37.     On June 23, 2022, ACCS filed a Dispositional Motion to Modify Temporary Custody to Planned Permanent Living Arrangement regarding R.W. in the Juvenile Court, attached hereto as **Exhibit 10**.

38.      ACCS' Motion to Modify Temporary Custody to Planned Permanent Living Arrangement was filed fourteen days after the twenty-four-month Sunset Date and forty-four days late.

39.      On August 1, 2022, R.W.'s current placement, Cincinnati Children's Hospital, indicated R.W. was clinically ready for discharge as of July 26, 2022.

40.      On October 3, 2022, the Juvenile Court issued a Judgment Entry (**Exhibit 11**) discussing the two-year time limit for a child to be in a children services agency's temporary custody and directing the Parties to submit briefs regarding such.  This Judgement Entry states, in part, as follows:

> Assistant Prosecutor Danolfo brought to the attention of the Court that counsel for Mother filed an Objection to Case Plan on September 21, 2022, with mention of the time limit in the current matter.
>
> [Counsel for Mother] advised the Court of his concern as to the timing of this matter and that there has never been an attempt for kinship placement. Further, he is concerned as to why ACCSB filed for [Planned Permanent Living Arrangement], but located a placement in a different state.
>
> *** 
>
> Attorney Miller, Assistant Prosecutor Danolfo brought to the attention of the Court that counsel for Mother filed an Objection to Case Plan on September 21, 2022, with mention of the time limit in the current matter.
>
> The Court finds that the matter of two (2) year time limit needs to be addressed. Both parties will be afforded the opportunity to brief the two (2) year time limit issues with the Court prior to the November 3, 2022 hearing.

41.     On October 7, 2022, ACCS submitted its Bench Brief regarding the two-year time

limit to the Juvenile Court, attached as **Exhibit 12**.

42.     ACCS' Bench Brief (**Ex. 12**) concedes that it did not act in accordance with law,

and violated multiple statutes, specifically stating, in part, as follows:

> During the Status Conference on September 22, 2022, counsel [for Mother]
> identified an issue concerning whether or not CSB could retain temporary
> custody of [R.W.] and remain involved in this case **due to the apparent
> passage of the two year deadline on or about June 4, 2022**.
>
> ***
>
> By its very terms [*sic*], the above statutes appear to suggest that, although
> the Court retains jurisdiction of [R.W.] after the issuance of a dispositional
> order [*see In Re Shropshire*, 2006-Ohio-4049 (Ohio Ct. App. Muskingum
> County 2006)], CSB involvement terminates at the conclusion of two
> years.  The Court cannot grant any further extensions.
>
> There are cases where this issue has arisen. Notably, in *In Re Beeman*, 11th
> Dist. Lake No. 95-L-023, 1996 Ohio App. LEXIS 3477, 1996 WL 4984877
> (Aug. 16, 1996), the Eleventh District Court of Appeals reasoned that the
> above statutory provisions were mandatory in nature, and that the failure
> of a children services agency to comply with the requirements deprives a
> juvenile court of the authority to render any order concerning the custody
> of a child.
>
> * * *
>
> Although [ACCS] does not believe it would be in [R.W.]'s best interest to
> terminate its involvement and its temporary custody, evidenced by the
> Motion for PPLA filed in this case, the statutory requirements have been
> held to be mandatory. (emphasis added).

43.     Mother's Response to ACCS Bench Brief (**Exhibit 13**) was submitted to the

Juvenile Court on October 13, 2022.

44.     Throughout the time of the Juvenile Court case regarding R.W., Mother has visited with R.W. weekly and maintains as much communication with her as allowed, and Mother seeks for R.W. to return home.

45.     On October 27, 2022, Defendant Lawton sent an email to numerous individuals associated with R.W.'s Juvenile Court case which indicated ACCS intends to send R.W. to a placement in Arkansas on November 7, 2022. **Exhibit 14**, Email from Angela Lawton dated October 27, 2022.

46.     Defendants have failed to file a new case plan with the Juvenile Court or provide any notice of any kind to the Juvenile Court of its intention to place R.W. in Arkansas.

47.     R.W.'s Mother and Maternal Grandmother make the approximately five hour drive from Ashtabula to Cincinnati to visit R.W. weekly.  Mother has long since completed every case plan objective established by the Juvenile Court, and, as Defendants are aware, has recently purchased a new home, and has a stable job in the medical field.

48.     Defendants are also aware that R.W.'s Maternal Grandmother is a registered nurse with the Cleveland Clinic, also has stable housing and income, and is committed to assisting Mother in meeting any of R.W.'s needs.

49.     R.W.'s care team at Cincinnati Children's Hospital, the site of her current placement, published a discharge summary on August 1, 2022, signed by a doctor, a registered nurse practitioner, a social worker, a dietician, a behavioral health consultant,

and the hospital's Director of Medical Services, who is also a doctor. This discharge

summary states, in part, as follows:

> [R.W.] has been in our hospital for 119 days. She has been clinically
> ready for discharge since 7/26/2022. [R.W.'s] team has been actively
> looking for alternative placement during each admission to
> inpatient and discharge from CCHMC residential, which is greatly
> appreciated and in the best interest of [R.W.].
>
> At baseline, [R.W.] is happy, engaging, and upbeat. She enjoys
> going for walks, listening to music, and creating music about her
> life experiences. [R.W.] is very positive and optimistic about her
> future and voices that in her music. [R.W.] has been receptive to
> behavioral plans, positive praise, and displays a lot of leadership
> skills on the unit with others in crisis.

50.     If ACCS places R.W. in Arkansas, Mother and Maternal Grandmother would no

longer be able to visit.  This would be in violation of Ohio Administrative Code 5101:2-

42-92, which requires frequent visitations between the Child and her family (Mother

and R.W.'s siblings- to which R.W. has not visited with her siblings in more than a year)

in order to maintain or enhance the bonding relationship with them.  Removing R.W.

and placing her in Arkansas, would prevent all visits from occurring and would

deteriorate and ruin the bond between R.W. and her family.

51.     Defendants' continued exercise of custody to R.W. is plainly unauthorized by

law, and their plan to send R.W. to Arkansas away from her family in Ohio, if executed,

would effectively constitute a kidnapping across state lines and would have a traumatic

and lasting negative impact on R.W.'s health and well-being.

## RELEVANT OHIO STATUTES

52.    R.C. 2151.353(G) provides as follows:

"**Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care**, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section. In resolving the motion, **the court *shall not* order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier**, regardless of whether any extensions have been previously ordered pursuant to division (D) of section 2151.415 of the Revised Code."

(Emphasis added).

53.    R.C. 2151.415 (A) provides as follows:

Except for cases in which a motion for permanent custody described in division (D)(1) of section 2151.413 of the Revised Code is required to be made, a public children services agency or private child placing agency that has been given temporary custody of a child pursuant to section 2151.353 of the Revised Code, **not later than thirty days prior to the earlier of the date for the termination of the custody order** pursuant to division (H) of section 2151.353 of the Revised Code or the date set at the dispositional hearing for the hearing to be held pursuant to this section, shall file a motion with the court that issued the order of disposition requesting that any of the following orders of disposition of the child be issued by the court:

(1) An order that the child be returned home and the custody of the child's parents, guardian, or custodian without any restrictions;

(2) An order for protective supervision;

(3) An order that the child be placed in the legal custody of a relative or other interested individual;

(4) An order permanently terminating the parental rights of the child's parents;

(5) An order that the child be placed in a planned permanent living arrangement;

(6) In accordance with division (D) of this section, an order for the extension of temporary custody.

(Emphasis added).

54.     R.C. 2151.415 (D)(3-4) provides as follows:

"**Prior to the end of the extension of a temporary custody order** granted pursuant to division (D)(2) of this section, the agency that received the extension shall file a motion with the court requesting the issuance of one of the orders of disposition set forth in divisions (A)(1) to (5) of this section. Upon the filing of the motion by the agency or, if the agency does not file the motion **prior to the expiration of the extension period**, upon its own motion, the court, **prior to the expiration of the extension period**, shall conduct a hearing in accordance with division (B) of this section and issue an appropriate order of disposition. In issuing an order of disposition, the court shall comply with section 2151.412 of the Revised Code.

No court shall grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and **the court *shall not* order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care**, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section."

(Emphasis added).

55.     R.C. 2151.412 provides as follows:

(F)(1) All parties, including the parents, guardian, or custodian of the child, are bound by the terms of the journalized case plan. A party that fails to comply with the terms of the journalized case plan may be held in contempt of court.

(2) Any party may propose a change to a substantive part of the case plan, including, but not limited to, the child's placement and the visitation rights of any party. **A party proposing a change to the case plan** *shall* **file the proposed change with the court and give notice of the proposed change in writing before the end of the day after the day of filing it to all parties and the child's guardian ad litem**. All parties and the guardian ad litem shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.

(Emphasis added).

56.     Ohio Juvenile Rule of Procedure 14(A) provides as follows:

(A) Termination. Any temporary custody order issued shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care. A temporary custody order shall extend beyond a year and until the court issues another dispositional order, where any public or private agency with temporary custody, **not later than thirty days prior to the earlier of the date for the termination of the custody order** or the date set at the dispositional hearing for the hearing to be held pursuant to division (A) of section 2151.415 of the Revised Code, files a motion requesting that any of the following orders of disposition be issued:

(1) An order that the child be returned home with custody to the child's parents, guardian, or custodian without any restrictions;

(2) An order for protective supervision;

(3) An order that the child be placed in the legal custody of a relative or other interested individual;

(4) An order terminating parental rights;

(5) An order for long term foster care;

(6) An order for the extension of temporary custody.

(Emphasis added).

## CAUSES OF ACTION

### Count 1
### Unreasonable Seizure
### Fourth and Fourteenth Amendments, 42 U.S.C. § 1983

57.     Plaintiffs adopt, reallege and incorporate by reference the previous allegations as though fully rewritten herein.

58.     This Count One is asserted against Defendants Burnett and Walton, in their individual capacities only, by Plaintiff R.W., and by Plaintiff Welch in her capacity as parent, natural guardian, and next friend of R.W.

59.     With purpose or intent, acting under color of state law, Defendants have unlawfully arrested, detained, and seized R.W.'s person. Reasonable state officials would not have arrested, detained, and seized R.W. as Defendants have. Defendants have seized R.W. without any lawful authority to do so and in clear and knowing derogation of legal authority prohibiting this seizure, that is objectively unreasonable under the Fourth and Fourteenth Amendments.

60.     The Court of Appeals for Ohio's 11th Appellate District, in which all parties reside, "has expressly held," "in interpreting R.C. 2151.353 and 2151.415," "that the one-year and two-year time requirements are mandatory in nature, and that the failure of a children services agency to comply with the requirements deprives a juvenile court of the authority to render any order concerning the custody of a child." *In re Beeman*, 11th Dist. Lake No. 95-L-023, 1996 Ohio App. LEXIS 3477, at *10 (Aug. 16, 1996). Furthermore, the

11th District has held that while a children services agency may, in certain cases, retain temporary custody of the child despite failure to comply with these statutory deadlines, upon the filing of a new complaint, "**the child must be returned to the parents** ... when: (1) the failure of the juvenile court and children's services agency to comply with the two-year limit cannot be explained by the existence of extenuating circumstances; and (2) the purpose of filing the new complaint is simply to circumvent the statutory requirement." *Id.* (emphasis added).

61.     Here, not only have Defendants not filed any new complaint at all, let alone one that would warrant their continued exercise of custody over R.W., they have not even tried to argue that "extenuating circumstances" exist to warrant such exercise (*See* Exhibit N), nor could they possibly do so legitimately.

62.     "Undeniably, clearly established law prohibits the unreasonable seizure of a minor by state social workers." *Brent v. Wayne Cty. Dept. of Human Servs.*, 901 F.3d 656, 686 (6th Cir.2018).

63.     All of these actions caused damage to Plaintiffs.

64.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages in excess of $25,000, such amount to be proven at trial, along with reasonable attorney's fees, interest, and costs expended herein.

**Count Two**
**Procedural Due Process**
**Fifth and Fourteenth Amendments, 42 USC § 1983**

65.     Plaintiffs adopt, reallege and incorporate by reference the previous allegations as though fully rewritten herein.

66.     This Count Two is asserted against Defendants Burnett and Walton, in their individual capacities only, by Plaintiff R.W., and by Plaintiff Welch both in her individual capacity and in her capacity as parent, natural guardian, and next friend of R.W.

67.     Defendants' repeated and ongoing exercise of custody over R.W. in repeated and ongoing violation of the statutory deadlines and requirements cited herein constitutes a violation of Plaintiffs' rights to procedural due process guaranteed to them by the Fifth and Fourteenth Amendments to the U.S. Constitution.

68.     "[T]he parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). *See also Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) ("[There is a] fundamental liberty interest of natural parents in the care, custody, and management of their child[ren].").

69.     "The Supreme Court has called parents' 'care, custody, and control of their children . . . perhaps the oldest of the fundamental liberty interests recognized by this Court.'" *Siefert v. Hamilton Cty.*, 951 F.3d 753, 762 (6th Cir.2020), citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion). "This right is

'far more precious than [any] property right[].'" *Siefert*, citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 38, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981) (Blackmun, J., dissenting) (editing mark omitted)

70.     "[S]tate intervention in the relationship between a parent and child" therefore "must be accomplished by procedures meeting the requisites of the Due Process Clause." *Eidson v. Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 635 (6th Cir.2007). And "children can state a claim based upon deprivation of a liberty interest ... when the officials fail to follow" such procedures. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.1990).

71.     The Court of Appeals for Ohio's 11th Appellate District, in which all parties reside, has expressly observed that "the procedural requirements of R.C. Chapter 2151 were designed to protect both the best interests of the child and the rights of the parents," and has held that "both the child's right to resolution and [the parents'] basic due process rights [a]re violated as a result of ... failure" to "timely" comply with these requirements. *In re Beeman*, 11th Dist. Lake No. 95-L-023, 1996 Ohio App. LEXIS 3477, at *21 (Aug. 16, 1996).

72.     All of these actions caused damage to Plaintiffs.

73.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages in excess of $25,000, such amount to be proven at trial, along with reasonable attorney's fees, interest, and costs expended herein.

**Count Three**
**Injunctive Relief**
**Fourth, Fifth and Fourteenth Amendments, 42 USC § 1983/Ohio common law**

74.     Plaintiffs adopt, reallege and incorporate by reference the previous allegations as though fully rewritten herein.

75.     This Count Three is asserted against all Defendants, in their individual and official capacities, by Plaintiff R.W., and by Plaintiff Welch both in her individual capacity and in her capacity as parent, natural guardian, and next friend of R.W.

76.     Injunctive relief, including, without limitation, affirmative acts prohibiting Defendants from placing R.W. in Arkansas, exercising custody over her, and from keeping her from her Mother without further unlawful interference is required to prevent the further loss of Plaintiffs' rights to which they are entitled.  Plaintiffs have no other adequate remedy at law.

77.      If Defendants are not temporarily, preliminarily, and permanently enjoined from unlawfully placing R.W. in Arkansas, and immediately ceasing their efforts to exercise unlawful custody over her, Plaintiffs will suffer irreparable harm.

**Count Four**
**Declaratory Judgment**
**Fourth, Fifth and Fourteenth Amendments, 42 USC § 1983/ O.R.C. § 2721.01**

78.     Plaintiffs adopt, reallege and incorporate by reference the previous allegations as though fully rewritten herein.

79.     This Count Four is asserted against all Defendants, in their individual and official capacities, by Plaintiff R.W., and by Plaintiff Welch both in her individual capacity and in her capacity as parent, natural guardian, and next friend of R.W

80.     Pursuant to R.C. § 2721.01 *et seq.*, a controversy has arisen with respect to the parties' respective rights and obligations pursuant to the Ohio Revised Code, Ohio Administrative Code, and the Ohio Juvenile Rules of Procedure regarding Defendants continued involvement with R.W. in her Juvenile Court case.

81.     A justiciable controversy exists between the parties and there is no adequate remedy at law.

82.     Defendants have acted in excess of their rights under the law and in violation of Plaintiff's rights of due process under the Ohio and United States Constitutions.

**Count Five**
**Interference with Custody**
**Ohio common law**

83.     Plaintiffs adopt, reallege and incorporate by reference the previous allegations as though fully rewritten herein.

84.     This Count Five is asserted against all Defendants, in their individual and official capacities, by Plaintiff R.W., and by Plaintiff Welch both in her individual capacity and in her capacity as parent, natural guardian, and next friend of R.W.

85.     Mother has a right to a parental/ custodial relationship with R.W.

86.    Defendants have intentionally and unlawfully interfered with Mother's relationship and ability to raise and rear R.W.

87.    Mother and R.W.'s relationship has been damaged by this intentional and unlawful interference thus entitling Plaintiffs to recover on a claim for Interference with Custody under Ohio law.

**Count Six**
**False Imprisonment**
**Ohio common law**

88.    Plaintiffs adopt, reallege and incorporate by reference the previous allegations as though fully rewritten herein.

89.    This Count Six is asserted against all Defendants, in their individual and official capacities, by Plaintiff R.W.

90.    Defendants have intentionally and unlawfully detained R.W. without consent of Plaintiffs and without authority of law.

91.    R.W. has been damaged by this unlawful detention, thus entitling her to recover on a claim for false imprisonment under Ohio law.

**WHEREFORE**, Plaintiffs, Amber Welch and R.W., request judgment as stated:

A. Temporary restraining orders, preliminary and permanent injunctions against Defendants, their agents, assigns, employees, and/or successors, from (a) placing R.W. in Arkansas, (b) exercising custody over R.W. without legal right, and (c) interfering with Welch's right to raise R.W. since the Defendants through their own intentional actions have divested themselves of the lawful ability to participate in the Juvenile Court case and violated numerous laws;

B. Judgment declaring Defendants actions to be illegal and to be removed from the Juvenile Court proceedings as a party regarding R.W.

C. Compensatory damages in excess of $75,000, along with interest, reasonable attorney's fees and costs expended herein;

D. Such further relief as this Court deems equitable, proper, or just.

Plaintiffs further demand that all issues presented in this Complaint that are triable by a jury be tried to a jury.

Respectfully submitted,

/s/ *Peter Pattakos*
Peter Pattakos (0082884)
Zoran Balac (0100501)
The Pattakos Law Firm
101 Ghent Rd.
Fairlawn OH 44333
P. 330.836.8533/F. 330.836.8536
peter@pattakoslaw.com
zbalac@pattakos.law.com

/s/ *Jason D. Wallace*
Jason D. Wallace (0090167)
526 S. Main St. Ste. 106
Akron, Ohio 44311
526 S. Main St., Ste. 106
Akron, Ohio 44311
P. 330.551.3270/F. 844.311.1990
jason@gethelpohio.com

**AFFIDAVIT**

STATE OF OHIO       )
                           SS
COUNTY OF SUMMIT   )

       **Jason D. Wallace,** being first duly sworn according to law, states as follows:

       I am Jason D. Wallace, an attorney licensed to practice law in the State of Ohio, Supreme Court Registration No. 0090167, and the attorney of record for Plaintiff, Amber Welch, in the case captioned <u>Amber Welch v. Ashtabula County Children Services Board et. al.;</u> United States District Court, Northern District of Ohio.

       That in connection with the Verified Complaint for injunctive and other relief, on November 2, 2022, I e-mailed the attached notice to Attorney Richard Danolfo at Richard.Danolfo@jfs.ohio.gov and called him at 440.998.1811 advising him that the Verified Complaint against the Defendants will be presented to the Court on or before Thursday, November 3, 2022, at 4:00 p.m.

By: _____
       Jason Wallace

       **SWORN TO BEFORE ME** by the said Jason D. Wallace and subscribed by him in my presence this _2nd_ day of November 2022.

_____
Notary Public  Peter Pattakos, Esq. Ohio Bar #0082884
               (My commission has no expiration date)

## VERIFICATION

STATE OF OHIO      )
                           ) SS
COUNTY OF SUMMIT  )

**Amber Welch,** being first duly sworn according to law, states as follows:

I am Amber Welch, Plaintiff in the case captioned <u>Amber Welch v. Ashtabula County Children Services Board et. al.</u>; United States District Court, Northern District of Ohio, and, as such, I have personal knowledge of the facts contained in this Verified Complaint for injunctive and other relief. I verify that the facts and allegations contained in the attached Complaint are true to the best of my knowledge, and in the absence of the issuance of such temporary, preliminary and permanent injunctive relief sought therein, I will suffer irreparable injury, loss and damage as more fully set forth in the Verified Complaint as will my Child R.W.

By: _____
             Amber Welch

**SWORN TO BEFORE ME** by the said Amber Welch and subscribed by her in my presence this ___ day of November 2022.

_____
Notary Public



JASON D. WALLACE
Attorney At Law
NOTARY PUBLIC
STATE OF OHIO
My Commission Has
No Expiration Date
Section 147.03 O.R.C.