**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Amber Welch, *et al.*, | ) | CASE NO. 1:22 CV 1992 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Ashtabula County Children Services Bd., | ) | <u>Memorandum of Opinion and Order</u> |
| *et al.*, | ) | |
| Defendants. | ) | |

### <u>INTRODUCTION</u>

This matter is before the Court upon Defendants' Motion to Dismiss (Doc. 11).  This case arises out of a state court order of temporary custody over a minor child.  For the reasons that follow, the motion is GRANTED.

### <u>FACTS</u>

For purposes of ruling on the pending motion, the facts set forth in the Verified Complaint ("Complaint") are presumed true.

Plaintiffs Amber Welch and R.W. bring this lawsuit against defendants Ashtabula County

1

Children Services Board ("ACCSB"), Tania Burnett, and Angela Lawton.  Welch is R.W.'s mother.  Defendant Burnett is the Executive Director of the ACCSB, and defendant Lawton is the caseworker who worked with R.W.

On June 4, 2020, Ashtabula County officials obtained an *ex parte* emergency order giving them custody of R.W.  The following day, ACCSB filed a complaint for temporary custody, alleging that R.W. is a neglected child.  According to the complaint, R.W. had been arrested for domestic violence, and Welch thereafter refused to pick up R.W. from the detention center.  The complaint also alleged that certain health issues suffered by R.W. were not being properly addressed by Welch.  That same day, the juvenile court held a hearing.  At the hearing, both parents, the guardian *ad litem*, and R.W. agreed that based on R.W.'s heath and behavioral problems, it was in the best interests of R.W. to be placed in the temporary custody of ACCSB.  This way, R.W. could receive the treatment that she needed.

On July 2, 2020, the juvenile court held an adjudicatory hearing regarding the issues raised in the complaint.  Welch admitted that she did not pick up R.W. from the detention center, and the juvenile court determined R.W. to be a dependent.  On August 5, 2020, the juvenile court held a dispositional hearing and kept her in the temporary custody of ACCSB despite R.W.'s wish to remain at home with her family.

The court entry memorializing the hearing noted a "Sunset Date" of June 29, 2021, when in fact the correct Sunset Date was June 4, 2021.  The Sunset Date appears to be one year after the juvenile court issues an order of temporary custody.  ACCSB may file motions for the extension of that date, but it appears that the juvenile court may extend an order of  temporary custody for no longer than two years past the entry of the initial order.  After the two year mark,

2

the juvenile court must decide whether to issue a permanent placement.

On March 25, 2021, the juvenile court held a semi-annual review of R.W.'s case. ACCSB advised the court that R.W was doing well in school and in her placement.  The guardian *ad litem* concurred noting that it was the best "R.W. has ever been doing."

On June 29, 2021, ACCSB filed a motion to extend temporary custody over R.W. According to the complaint, there is no docket entry resolving the motion.

On November 16, 2021, a case review was filed with the juvenile court, which contained positive statements regarding Welch.

It appears that the juvenile court held a hearing on December 9, 2021 regarding R.W.'s placement at a qualified residential treatment facility ("QRTP").  Due to COVID, the hearing was held remotely.  The court agreed the QRTP was appropriate, and R.W. was placed at Cincinnati Children's Hospital.  The docket entry indicates that ACCSB made an oral motion to extend temporary custody of R.W., which the court granted to June 5, 2022.

On February 28, 2022, ACCSB filed another motion to extend temporary custody. Thereafter, on June 23, 2022, ACCSB field a motion to modify temporary custody to planned permanent living.  On August 1, 2022, Cincinnati Children's Hospital indicated that R.W. was clinically ready for discharge.

On October 3, 2022, the juvenile court asked the parties to submit bench briefs regarding the passage of the two-year deadline.  In other words, it appears that the juvenile court questioned whether it maintained jurisdiction over R.W.

On October 27, 2022, defendant Lawton sent an email communication indicating that ACCSB intended to place R.W. in a facility in Arkansas on November 7, 2022, depending on the

3

decision of the juvenile court judge.   According to the complaint, Welch had maintained her relationship with R.W. and wanted R.W. to return home.  If ACCSB decided to place R.W. in Arkansas, Welch and other family members would be unable to visit.

Plaintiffs filed a motion for temporary restraining order and preliminary injunction in this Court seeking to prevent defendants from placing R.W. at the Arkansas facility.  Generally speaking, plaintiffs argued that the juvenile court no longer had jurisdiction over R.W. According to plaintiffs, the time limits set forth under the Ohio Revised Code expired and ACCSB had no statutory right to any type of custody over R.W.  Thereafter, plaintiffs withdrew their motion.  In their notice of withdrawal, plaintiffs indicate that the parties agreed to release R.W. to Welch's custody.

The complaint contains six claims for relief.  Count one is a Section 1983 claim for unreasonable seizure.  Court two is a Section 1983 claim for violation of procedural due process. These counts are asserted against only Burnett and Lawton in their personal capacities.  Counts three and four seek injunctive relief and a declaratory judgment, respectively.  Count five is a claim for "interference with custody" and count six is a claim for false imprisonment.  These four  claims are asserted against all defendants, including Burnett and Lawton in both their individual and official capacities.

Defendants now move to dismiss the complaint, and plaintiffs oppose the motion.

**STANDARD OF REVIEW**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v.*

4

*Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008) ).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678.  The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

**ANALYSIS**

Defendants argue that dismissal is warranted because social workers have absolute immunity for conduct associated with the judicial phase of the child custody process.  According to plaintiff, retaining custody of R.W. through late filings with the Court is entitled to absolute immunity.  Alternatively, defendants argue that they are entitled to quasi-judicial immunity

5

because they acted pursuant to court orders regarding custody.  Defendants also argue that they are entitled to qualified immunity and that ACCSB is not *sui juris*.

In response, plaintiffs argue that defendants are not entitled to either absolute or quasi-judicial immunity.  According to plaintiffs, these types of immunity are associated only with judicial processes akin to initiating court actions or testifying.  Immunity is not available for performing administrative, investigative, or agency decision-making.  Plaintiffs also argue that qualified immunity is not available because clearly established Fourth Amendment law prohibits the unreasonable seizure of a minor by the state.  Plaintiffs further dispute that "qualified immunity under R.C. 2744.02" is applicable.

1. The individual defendants

As an initial matter, although not identified under a separate heading, the Court notes that in the context of qualified immunity, defendants very generally raise the issue of insufficiency of the pleadings and cite to the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In response, plaintiffs argue that the allegations related to state of mind are, in fact, sufficiently plead.  The Court finds that the issue of the sufficiency of the pleadings was sufficiently raised to permit the Court to address whether Rule 8's pleading requirements are satisfied.

Upon review, the Court finds that the Complaint must be dismissed as to the individual defendants because there are no allegations identifying any actions taken by either Burnett or Lawton.  The only allegations specific to these individuals are as follows:

4. Defendant [ ] Burnett is the Executive Director for ACCS and has been an active participant regarding her agency's decisions regarding Plaintiff and R.W.;

5. Defendant [ ] Lawton is the on-going ACCS caseworker for R.W.;

6

45.     On October 27, 2022, Defendant Lawton sent an email to numerous individuals associated with R.W.'s Juvenile Court case which indicated ACCS intends to send R.W. to placement in Arkansas on November 7, 2022.

58.     This Count One is asserted against Defendants Burnett and Walton [sic][1], in their individual capacities only....

66.     This Count Two is asserted against Defendants Burnett and Walton [sic], in their individual capacities only....

Upon review, the Court finds that these allegations do not satisfy Rule 8(b).  Although the rule requires only a "short plain statement of the claim showing that the pleader is entitled to relief," the Sixth Circuit has repeatedly held that in addressing allegations of constitutional violations, courts must look to the conduct alleged against each individual separately.

This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.2008) *(citing Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir.2002)).

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011).

Moreover, courts cannot "ascribe the acts of all [i]ndividual [d]efendants to each individual defendant."  *Id*.

In this case, there are simply no allegations whatsoever directed at any actions taken by Burnett that would result in a Fourth Amendment violation.  Plaintiffs allege only that Burnett was an active decisionmaker for the decisions made with respect to plaintiff R.W.  But, the Complaint does not detail a single decision Burnett actually made regarding R.W.  And, with regard to Lawton, the sole allegation is that defendant Lawton sent an email discussing the

---

[1]     This Court will assume *arguendo* that plaintiffs intended to assert counts one and two against defendants Burnett and *Lawton*, as the Complaint makes no mention of an individual named Walton.

7

possible placement of R.W. in Arkansas.  There are simply no allegations that either individual

defendant personally arrested, detained, or seized R.W.  *Compare*, *Kovacic v. Cuyahoga Cty*

*Department of Children and Family Services*, 724 F.3d 687 (6th Cir. 2013) (denying qualified

immunity where social workers *personally* went into home and forcibly removed children).   Nor

do these allegations give rise to a violation of the procedural due process rights of either

plaintiff.  The allegations in this regard fare worse.  Plaintiffs allege that "defendants' repeated

and ongoing violation of the statutory deadlines and requirements" constitutes a due process

violation.  As an initial matter, these allegations fail to identify which individual defendant

engaged in any particular behavior.  To the extent plaintiffs are complaining that there was error

in connection with the untimely filing of motions, the exhibits attached to the Complaint

demonstrate that a prosecuting attorney bore responsibility for those filings.  Absent any

allegations that Burnett or Lawton personally took any specific action in connection with this

matter, the Complaint fails to state a claim for which relief can be granted with respect to counts

one and two.

With regard to count three, plaintiffs seek injunctive relief preventing defendants from

placing R.W. in Arkansas.  Based on the representations made by plaintiffs in connection with

the motion for temporary restraining order, it appears that this claim is now moot.  The Court's

understanding is that R.W. was not placed in Arkansas, and custody has been returned to

plaintiff Welch.

The Court finds that the remaining claims, *i.e.*, plaintiffs' state law claims for declaratory

judgment, "interference with custody," and false imprisonment fail for the same reasons set forth

above.  Plaintiffs fail to meet Rule 8's pleading requirements because the Complaint contains no

factual allegations directed at either defendant.  Therefore, these claims are also subject to dismissal.

> 2.      ACCSB

ACCSB moves to dismiss the Complaint on the basis that it is not *sui juris*.  In response, plaintiffs appear to argue that Ohio counties are amenable to suit.  In this case, however, plaintiffs did not sue an Ohio *county*.[2]   Rather, plaintiffs filed suit against a branch of the county government.  It is well-settled that county branches are not *sui juris*.  *See*, *Loper v. Cuyahoga County Children and Family Services*, 2019 WL 1597552 (N.D. Ohio April 15, 2019)(collecting cases).  Therefore, dismissal is warranted.

> **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 11) is GRANTED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/6/23

---

[2]      Plaintiffs also argue that they alleged a "policy or procedure for ignoring timely filing deadlines by [ACCBS]" and, therefore, their Section 1983 claims survive.  A review of the Complaint discloses that plaintiffs allege no such policy, nor are the Section 1983 claims asserted against ACCBS.  Regardless, ACCBS is not *sui juris* even if the Complaint contained those allegations and claims.

9